IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALI KOURANI, #79196-054, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 23-cv-03501-JPG |
| | ) |
| USA, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

    Plaintiff Ali Kourani, an inmate in the custody of the Federal Bureau of Prisons (FBOP) and currently incarcerated at the United States Penitentiary in Marion, Illinois (USP-Marion), filed this lawsuit under the Federal Tort Claims Act, 28 U.S.C. § 28 U.S.C. §§ 1346, 2671-80 (FTCA). In the Complaint, Plaintiff brings claims against the United States for the alleged medical malpractice, negligence, civil conspiracy, and intentional infliction of emotional distress caused by officials at USP-Marion. He seeks declaratory, monetary, and "Rule 65" injunctive relief.

    This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

    The Complaint sets forth the following allegations (Doc. 1, pp. 1-11): Plaintiff is a federal inmate who was housed in USP-Marion's communications management unit (CMU) from March 18, 2021 until August 8, 2023. *Id*. at 2. Before transferring to USP-Marion, Plaintiff was

1

prescribed medication for anxiety and depression at Metropolitan Correctional Center in New York (MCC-New York). He struggled with obesity and related pain in his back, legs, and ankles when ambulating. He was issued ankle braces for an ankle/knee injury and continued to wear both braces to support his ankles while staying active. The braces were confiscated in transit to USP-Marion. *Id*.

After arriving at USP-Marion, Plaintiff met with Clinical Director Pass for a medical examination and psychiatric medication on April 18, 2021. Plaintiff reported that his right ankle was still injured. He also requested two ankle braces, orthopedic shoes, and exercise opportunities to help manage his obesity and mental health issues. Pass reviewed Plaintiff's right ankle x-rays from MCC-New York and issued him a single right ankle brace after confirming his pre-existing injury. *Id*.

While playing volleyball on May 18, 2021, Plaintiff twisted his left ankle. *Id*. at 3. The following day, Plaintiff could not walk due to swelling, bruising, and pain in his ankle. He told Health Services Administrator Harbison about this new injury and showed her his ankle. Plaintiff specifically requested treatment with a doctor, ankle x-rays, a wheelchair, crutches, ace bandages, and ice packs. No medical care was provided. From May 19, 2021 until May 23, 2021, Plaintiff remained bedridden and in pain, relying on other inmates to bring him food, water, and ice while he awaited medical attention. *Id*.

On May 23, 2021, Plaintiff went to the CMU Officer's station seeking medical attention and met with Nurse McGee. Plaintiff reported his injury to the nurse, showed her the swelling and bruising, and requested treatment. She wrote down his name but did not treat him. *Id*.

Several days later, Plaintiff met with McGee, Hughes, and Moulten at sick call to address his complaints of ongoing and excruciating pain and immobility. He reported the same symptoms

at sick call on six occasions. Even so, Plaintiff received no medical treatment for the left ankle injury. For the next three weeks, Plaintiff could barely move and suffered persistent pain. Warden Sproul, Harbison, McGee, Hughes, and others disregarded his complaints. *Id*. at 3-4.

As Plaintiff's ability to move diminished in the months that followed, his symptoms of anxiety, depression, and obesity increased. *Id*. at 4. He was soon unable to run, jump, climb stairs, or put weight on his ankles for long periods of time. Plaintiff required more exercise to promote better physical and mental health, but he was unable to ambulate without medical treatment. He regularly complained about these matters to Sproul, Harbison, Pass, and others. However, none of them touched, examined, or treated his injury. *Id*.

On July 14, 2021, Plaintiff spoke to Sproul and Harbison together. *Id*. at 5. He showed them his bruised and swollen left ankle. Although Harbison again wrote down his name, the defendants took no steps to treat his injury. *Id*.

Plaintiff filed grievances to address the matter, but his grievances and appeals were delayed or denied by Case Manager Simpkins, Associate Warden's Secretary Wallace, and others. He requested a copy of his medical records, only to discover no record of his injury or complaints. Plaintiff has since received no medical care for his injuries from Sproul, Pass, or Harbison, and maintains that they conspired to deny him medical treatment and retaliate against him. *Id*.

On October 28, 2021, Physician's Assistant Brooks finally agreed to x-ray his left ankle. *Id*. at 6. Plaintiff requested a left ankle brace or bandage. Brooks "denied his request until an x-ray [was] done," and Brooks did "what supposedly should have been done <u>FIVE</u> months ago." *Id*.

Plaintiff "filed his FTCA" on September 3, 2021, and it was denied April 12, 2022. Regional Counsel Mary Noland explained that the "investigation . . . did not reveal that [Plaintiff] suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons

employees acting within the scope of their employment." *Id*.

### Related Lawsuit

Plaintiff originally brought claims against individual federal agents in state court under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and his case was removed to this federal court in *Kourani v. Sproul, et al.*, Case No. 21-cv-01721-JPG (S.D. Ill. 2021) (original case). At screening, this Court recognized two Eighth Amendment claims under *Bivens* and allowed them to proceed against individual federal agents (Counts 1 and 2). (Doc. 12, original case). The Court also allowed four tort claims to proceed against the United States under the FTCA (Counts 3, 4, 5, and 6). *Id*. Defendants moved for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 31, original case). The Court denied their motion as to the *Bivens* claims (Counts 1 and 2) and granted their motion as to the FTCA claims (Counts 3, 4, 5, and 6). (Doc. 47, original case). Plaintiff was allowed to proceed with the *Bivens* claims in Counts 1 and 2 in the original case, and he subsequently filed this action to revive the FTCA claims referred to as Counts 3, 4, 5, and 6 in the original case. Because the FTCA claims were originally numbered as Counts 3, 4, 5, and 6 in Case No. 21-cv-01721, the Court retains the same numbering for the claims below.

Turning to the allegations in the *pro se* Complaint, the Court finds it convenient to designate the following enumerated counts consistent with the same claims brought in the original case):[1]

**Count 1:**   *See* Case No. 21-cv-01721-JPG at Doc. 12 and 47 (not re-pleaded here).

**Count 2:**   *See* Case No. 21-cv-01721-JPG at Doc. 12 and 47 (not re-pleaded here).

**Count 3:**   FTCA claim against the United States for the medical malpractice of

---

[1] Because Plaintiff did not re-plead Counts 1 and 2 in this suit, the Court has not designated either claim in this action, and both Counts 1 and 2 are considered dismissed without prejudice from this case.

|  |  |
|---|---|
|  | Harbison, Pass, McGee, Hughes, Moulten, and Brooks who denied Plaintiff medical care, ankle braces, medical shoes, and bandages for his foot and ankle injuries at USP-Marion. |
| **Count 4:** | FTCA claim against the United States for the negligence of Sproul, LaPlant, Simpkins, Wallace, Fields, Nolands, Harbison, Pass, Brooks, McGee, and Moulten, who breached their duty to provide Plaintiff with medical care for his foot and ankle injuries at USP-Marion. |
| **Count 5:** | FTCA claim against the United States for a civil conspiracy by Sproul, LaPlant, Simpkins, Wallace, Fields, Nolands, Harbison, Pass, Hughes, Moulten, and McGee for reaching an agreement to deny Plaintiff medical care for his foot and ankle injuries at USP-Marion. |
| **Count 6:** | FTCA claim against the United States for intentional infliction of emotional distress by United States employees at USP-Marion for their knowing and intentional denial of all medical care at USP-Marion. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court. Any other claim that is mentioned in the Complaint but not addressed herein should be considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

Counts 3 through 6 survive screening under § 1915A and the Federal Tort Claims Act (FTCA) for the same reasons already set forth in the original Order for Service of Process (Doc. 12) in *Kourani v. Sproul, et al.*, Case No. 21-cv-01721-JPG (S.D. Ill. 2021). The FTCA explicitly authorizes "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). When analyzing an FTCA claim, the Court looks to the law of the state

where the misconduct occurred. *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013). Counts 3 through 6 arise from tortious conduct that allegedly occurred in Illinois, so Illinois law controls these claims.

**Count 3**

Plaintiff brings a claim against the United States based on the medical malpractice of USP-Marion officials who denied care for his ankle injuries. Under Illinois law, a medical malpractice claim must be supported by an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the claim, and it must be supported by a physician's report that complies with the requirements of 735 ILCS § 5/2-622. Plaintiff did not submit the affidavit or report with his Complaint. His failure to do so is not dispositive of his claim at screening. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). To survive a motion for summary judgment, however, he must comply with this requirement by filing the appropriate affidavit or certificate of merit along with a physician's report. For now, Count 3 shall proceed as a FTCA claim against the United States arising from medical malpractice by federal agents at USP-Marion.

**Count 4**

Plaintiff next claims the above acts also constituted negligence.[2] In order to state a claim for negligence under Illinois state law, a complaint must allege facts to establish that the defendant owed Plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the Plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Plaintiff alleges that the BOP officials had a duty to provide him with medical care, breached that duty, and caused his

---

[2] Illinois courts have held that Section 2-622 applies to negligence by a medical provider as well as medical malpractice. *See, e.g., Hutton v. Holy Cross Hosp.*, 2012 WL 6965235, at *4-5 (Ill. App. 1, Dist. 2012) (citing 735 ILCS § 5/2-622 (West 2010)) (affirming dismissal of third amended complaint for failure to support medical negligence claim with Section 2-622 affidavit and for failure to allege sufficient facts to state claim under Section 2-615).

injuries. Count 4 shall proceed at this juncture.

### Count 5

Plaintiff alleges a civil conspiracy among federal officials to unlawfully deny him all medical treatment at USP-Marion. Under Illinois law, a plaintiff must demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). Plaintiff maintains that BOP officials reached an agreement to deny his requests for medical care during his incarceration at USP-Marion, that such conduct was unlawful, and that he suffered injuries and pain as a result. The allegations support an FTCA claim against the United States, so Count 5 shall receive further review.

### Count 6

Plaintiff maintains that the denial of medical care at USP-Marion exacerbated his anxiety and depression. To proceed with this claim under the FTCA, he must show that the BOP officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). According to the Complaint, Plaintiff suffered intense and extreme feelings of depression and anxiety resulting from the intentional denial of his medical care, so Count 6 shall proceed as an FTCA claim against the United States.

**Rule 65 Relief**

Plaintiff requests relief under "Rule 65" in the form of a diagnosis and treatment of his left foot injury, including an MRI and/or CT scan and treatment with an orthopedic specialist. (Doc. 1, pp. 1, 8-9). He also requests a preliminary and permanent injunction. *Id*. It is unclear what medical care and testing he has requested or received for this injury since 2021 because his allegations do not fill in the gap between his last appointment with Brooks on October 28, 2021 and the date he filed this second action two years later on October 27, 2023. Without this information, the Court is unable to determine whether interim injunctive relief (or permanent injunctive relief) is warranted. Moreover, Plaintiff is already pursing a request for injunctive relief as Count 2 in the original case, Case No. 21-cv-01721-JPG. Plaintiff's request is **DENIED without prejudice** herein.

**Disposition**

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A. There are no claims designated as Counts 1 and 2 herein. **COUNTS 3**, **4, 5,** and **6** shall proceed as FTCA claims against the **UNITED STATES**.

**The Clerk of Court is DIRECTED to ENTER the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on the United States; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve the United States pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint (Doc. 1), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint (Doc. 1), and this Memorandum and Order.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed without payment of fees is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is reminded that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED:   10/31/2023                                           *s/  J. Phil Gilbert*
                                                              **J. PHIL GILBERT**
                                                              **United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve the defendant with a copy of your Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Answer, but it is entirely possible that it will take **90 days** or more. When the defendant filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before the defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.